UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DANIEL L. LASH,

  Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

  Defendant.
_____/

Case No.  1:15-CV-0488

HON. GORDON J. QUIST

### OPINION

  This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Daniel Lash seeks review of the Commissioner's decision denying his claim for disability insurance benefits under Title II of the Social Security Act.

### STANDARD OF REVIEW

  The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits,

and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 50 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.129, 182.) He successfully completed high school, completed some college, and was previously employed as a truck driver. (PageID.155, 174–75.) Plaintiff applied for benefits on May 10, 2012, alleging that he had been disabled since November 15, 2010, due to a shoulder injury, a herniated disc in his neck, and a broken hand. (PageID.182, 268–70.) Plaintiff's application was denied on August 23, 2012, after which time he requested a hearing before an ALJ. (PageID.200–11.) On August 23, 2013, Plaintiff appeared with his counsel before ALJ Kathleen Eiler for an administrative hearing with testimony being offered by Plaintiff and a vocational expert

(VE). (PageID.150–79.) In a written decision dated October 25, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.129–49.) Plaintiff thereafter appealed the decision to the Social Security Appeals Council and provided additional evidence that had not been before the ALJ. On March 10, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.25–31.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Eiler determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 15, 2010, his alleged onset date. (PageID.134.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative disc disease, status post spinal fusion; (2) right hand and wrist disorder; (3) right shoulder disorder; (4) hypertension; and (5) left occipital neuralgia. (PageID.134.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.136–37.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) with the following: He can never push/pull with his right upper extremity. He can never climb ladders, ropes or scaffolds and never crawl, but he can occasionally climb ramps and stairs, balance, stoop, crouch, and kneel. He can occasionally reach overhead with his right upper extremity and can frequently (as opposed to constantly) handle or finger with his right upper extremity. He must avoid all exposure to vibration and workplace hazards.

(PageID.137.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.142.)

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 510,000 jobs in the national economy in the positions of cleaner, inspector, and packager that an individual similar to Plaintiff could perform. (PageID.175–76.) This represents a significant number of jobs. *See Hall*

*v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from November 15, 2010, through October 25, 2013. (PageID.144.)

## DISCUSSION

Plaintiff's brief claims the ALJ's decision is unsupported by substantial evidence for the following reasons.

1. The ALJ committed reversible error by failing to properly weigh the evidence, including not properly considering the opinions of Plaintiff's treating physicians;

2. The ALJ did not have substantial evidence to support her finding that Plaintiff could have performed light work; and

3. This Court should consider the post-decision evidence, which demonstrates that this case should be remanded under Sentence Six.

(PageID.707.) The Court will discuss the issues below.[2]

**1.**

Plaintiff first claims the ALJ erred in considering several opinions in the record. He argues the ALJ was required to give controlling weight to the opinions of his treating physicians, Dr. Jeffrey Thome, D.O., and Dr. J. Christopher Eyke, M.D., and failed to provide "good reasons"

---

[2]Plaintiff's brief begins by arguing for a sentence six remand. The Court will consider this claim of error last, however, in order to align the issues with the sequential analysis. In addition, the Court notes Plaintiff's brief alludes to a separate argument not mentioned in the Statement of Errors–that the ALJ improperly discounted his subjective allegations due to his failure to seek treatment and did not consider whether that failure was due to financial constraints. (PageID.708.) Because it was not included in Plaintiff's statement of errors, Plaintiff has waived the argument. (PageID.707.) *See Nichols v. Comm'r of Soc. Sec.*, No. 1:12-cv-995, 2014 WL 4259445, at * 9 (W.D. Mich. Aug.28, 2014) (collecting cases). In addition, the argument is waived because it is raised in a perfunctory manner. *Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). Finally, even if all this were not so, Plaintiff's claim is meritless. The ALJ's credibility discussion did not mention Plaintiff's failure to seek treatment as a reason to discount Plaintiff's subjective allegations. (PageID.140.)

for giving the opinions less weight. Plaintiff also argues that the ALJ erred in relying on other medical opinions in the record. The Court disagrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It appears undisputed that Dr. Thome and Dr. Eyke qualify as treating physicians.

The deference accorded to such opinions is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

      A.    Dr. Thome

On August 14, 2013, Dr. Thome filled out a check-box assessment regarding Plaintiff's physical RFC.[3] Among other things, Dr. Thome opined that Plaintiff could only occasionally lift and carry up to ten pounds. (PageID.624). He could only sit, stand, or walk without interruption for ten to fifteen minutes. (PageID.625.) Furthermore, in an eight hour workday, Dr. Thome stated Plaintiff could only sit for a total of three hours, stand for one hour, and walk for one hour. (PageID.625.) Plaintiff could never use his hands for reaching, handling, fingering, feeling, or pushing and pulling, and could never climb stairs, ramps, ladders, scaffolds, or stoop, kneel, crouch or crawl. (PageID.627.) Finally, Plaintiff could never tolerate exposure to unprotected heights, moving mechanical parts, extreme cold, extreme heat, and vibrations. Plaintiff could only be in environments with moderate noise. (PageID.628.) Dr. Thome concluded that Plaintiff would have problems with anything that required him to use his arms and shoulders. (PageID.629.) The ALJ assigned "limited weight" to the opinion, noting that it was unsupported by objective testing as well as the doctor's own medical records. (PageID.141.)

The ALJ's reasons are well supported. On March 29, 2011, Plaintiff sought treatment with Dr. Thome for shoulder pain, but had a full range of motion and Dr. Thome found Plaintiff to be neurovascularly intact. (PageID.544.) An x-ray found no gross abnormalities or arthritis.

---

[3]The Court notes the Sixth Circuit has recently reaffirmed that such opinions, without accompanying explanations–as here–are "weak evidence at best." *Hernandez v. Comm'r of Soc. Sec.*, No. 15-1875, 2016 WL 1055828, at *4 (6th Cir. Mar. 17, 2016) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993)).

(PageID.543.) A MRI suggested a superior labral tear in the right shoulder, and Plaintiff was referred to Dr. Gerth. (PageID.542.) Treatment notes from Dr. Gerth note that the pain began after Plaintiff took a three day snowmobile ride in March 2011, and Dr. Gerth treated Plaintiff with a cortisone injection, which Plaintiff stated gave him 80-90% improvement. (PageID.571–72.) Plaintiff again complained of shoulder pain on February 23, 2012. Dr. Thome again referred him to Dr. Gerth, who performed surgery on the right shoulder on March 20, 2012. (PageID.538, 561, 566–67.) While Plaintiff continued to complain of shoulder and neck pain, Dr. Thome noted that neurovasculary, Plaintiff's upper extremities were intact. (PageID.610.) After surgery, examinations of Plaintiff's shoulder were benign. Plaintiff had "negative impingement signs and negative Neer's [test]." (PageID.621.) Plaintiff also had a negative empty can test, Speed's test, O'Brien's test, and Hoffman's test. (PageID.621.) Plaintiff was given a left occipital nerve block for pain. (PageID.620.) At a follow up, Plaintiff stated he had complete relief regarding the radiating pain, but continued to have tenderness in his cervical spine at the C4 level. He was assessed with "very mild adjacent level spondylosis at C4." (PageID.619.)

The Court finds the ALJ provided good reasons, supported by substantial evidence, for giving limited weight to Dr. Thome's opinion. The Court does not doubt Plaintiff experiences pain, but the record does not support a conclusion that Plaintiff is limited beyond that found in the RFC. After surgery on his shoulder and a nerve block for pain, Plaintiff stated he obtained complete relief and objective tests were consistently negative. Such do not support Dr. Thome's opinion that Plaintiff would have extreme limitations on the use of his upper extremities..

  B. Dr. Eyke

On August 16, 2013, Dr. Eyke filled out a medical source statement regarding Plaintiff's physical RFC that was identical to the one filled out by Dr. Thome. Like Dr. Thome, Dr.

8

Eyke opined that Plaintiff was impaired to an extent far greater than that recognized by the ALJ. (PageID.631–36.) Noting Plaintiff had a prior spinal fusion surgery and a shoulder impingement, Dr. Eyke opined that Plaintiff could only lift and carry up to ten pounds. (PageID.631.) Plaintiff could sit, stand, and walk for only thirty minutes at any one time, and could only sit for three hours total in an eight hour workday. He further could only stand and walk for one hour each in the workday. (PageID.632.) Dr. Eyke stated that the other three hours would have to be spent resting to control his chronic pain. (PageID.632.) Furthermore, Plaintiff could not use his hands for activities such as reaching, handling, fingering, feeling, or pushing and pulling. (PageID.633.) Plaintiff could only balance occasionally, and never perform other postural activities, such as climbing ramps, stairs, ladders, and scaffolds, stooping, kneeling, crouching, and crawling. (PageID.634.) Finally, Plaintiff could only be exposed to moderate noise, and occasional humidity and wetness, dust, odors, fumes, and pulmonary irritants. He could occasionally operate a motor vehicle. (PageID.635.) Dr. Eyke summed up his opinion by stating that Plaintiff had problems with the use of his upper extremities and shoulders due to his fusion surgery, adjacent degeneration, and chronic pain. (PageID.636.) The ALJ gave the opinion "limited weight" noting that the opinion was not consistent with Dr. Eyke's treatment records. The ALJ further noted the similarities between Dr. Eyke's opinion and Dr. Thome's opinion.[4] (PageID.141.)

       The ALJ's conclusion that the extreme restrictions offered by Dr. Eyke were inconsistent with his earlier treatment notes are well supported. Dr. Eyke saw Plaintiff on January 30, 2012–three years after Dr. Eyke performed spinal fusion surgery on Plaintiff. (PageID.428.)

---

[4]Plaintiff highlights this statement and claims that it displays an impermissible inference on the part of the ALJ "that the doctors were dishonest because their statements were similar" when in fact the doctor's statements were similar because they were based off of a review of similar evidence. (PageID.710.) Maybe, maybe not. But as shown with Dr. Thome, and as shown below with Dr. Eyke, the ALJ provided other good reasons, supported by substantial evidence, for giving less than controlling weight to the doctors' opinions. Plaintiff's focus on a single sentence in the ALJ's discussion of the opinion evidence does nothing to change that determination.

Plaintiff complained that over the past six months he experienced neck and right shoulder pain that worsened with activities and lifting. A physical examination, however, found that Plaintiff's cervical spine had a good range of motion. Plaintiff had "full strength" in his upper extremities aside from some weakness in his right deltoid. (PageID.428.) On March 8, 2012, Plaintiff underwent a CT and MRI exam on his cervical spine. The CT scan revealed a "[s]atisfactory postop appearance." (PageID.431.) Plaintiff's spinal alignment was normal, with intact neural foramina. There was no evidence of fracture or malignancy. (PageID.431.) The MRI revealed "mild to moderate foraminal narrowing on the right" at the C3-C4 level, but was "otherwise unremarkable." (PageID.432.) A week later, Plaintiff followed up with Dr. Eyke. Dr. Eyke noted that the CT scan "shows a solid arthrodesis at both levels" and that the MRI showed a "disc herniated at the C3-4 level" and "spondylosis at the C4-5" level, but Dr. Eyke recommended avoiding surgery, and instead prescribed therapy and an epidural. (PageID.427.) Three months later, however, Plaintiff stated he did not have much pain relief from the epidural. Dr. Eyke found that Plaintiff remained neurologically intact, and prescribed Ultram. Plaintiff was also referred to Michigan Pain Consultants and placed in therapy–though it appears Plaintiff did not attend either due to lack of resources. (PageID.573.) On June 10, 2013, Plaintiff's cervical spine had a "nearly full" range of motion, full strength in his upper extremities, and only "mild impingement symptomatology." (PageID.617.)

All this provides substantial evidence supporting the ALJ's conclusion that Dr. Eyke's opinion was undercut by his own treatment notes. Plaintiff consistently demonstrated a nearly full range of motion in his cervical spine, and had nearly full strength in his upper extremities. As the ALJ noted, this was inconsistent with the later opinion that, among other things, stated Plaintiff could never use his hands for any activity. The Sixth Circuit has consistently held that

inconsistencies between proffered restrictions and the underlying treatment records are good reasons for discounting a treating source's opinions. *See e.g., Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 549–50 (6th Cir. 2014); *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 75–76 (6th Cir. 2012). Accordingly, Plaintiff's argument regarding Dr. Eyke is rejected.

        C.     Dr. Gerth and Dr. Lachniet

Plaintiff finally argues the ALJ erred in giving significant weight to the opinions of Dr. Gerth and Dr. Lachniet. The Court disagrees.

On August 11, 2010, Dr. Gerth evaluated Plaintiff regarding a fracture of his right fifth metacarpal shaft. (PageID.385.) Plaintiff had previously injured his hand eight years ago, and had re-injured it while at work. Dr. Lachniet had stated he could return to work, and Plaintiff was looking for a second opinion. (PageID.385.) An examination revealed moderate pain over the fracture site, but a good range of motion. X-rays revealed a volar flexion at the new injury site. Plaintiff was advised to splint his wrist for ten days, but Dr. Gerth agreed with Dr. Lachniet that Plaintiff could return to work on August 25. (PageID.385.) On November 2, 2010, Dr. Lachniet completed a disability slip at the request of Plaintiff's wife that limited Plaintiff to working only 8 hour days and 40 hour weeks. (PageID.477.) On October 13, 2010, Dr. Lachniet restated that Plaintiff was limited to working eight hour work days, but that he could return to customary work on November 15, 2010. (PageID.494.) The ALJ gave both opinions "significant weight." (PageID.141.) Plaintiff does not provide a basis for disturbing the Commissioner's decision.

Dr. Gerth and Dr. Lachniet were acceptable medical sources, and the ALJ did not commit error in giving weight to their opinions. *See* 20 C.F.R. §§ 404.1513(a), 404.1527(c). Plaintiff alleges the ALJ could not rely on these opinions because much of the medical record was generated after the doctors had rendered their opinions. This is not sufficient to establish error.

11

Given the delay inherent in the administrative review process, few, if any cases, will present a static medical record from a date before the decision on initial review through the date of the ALJ's decision. It is patent that the ALJ understood that the doctors gave their opinions on the basis of the medical record as it existed in 2010. (PageID.141). The ALJ is responsible for weighing conflicting evidence. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). The ALJ was free to consider the doctors' opinions and determine what weight, if any, they should be given.

Plaintiff also argues that it was in err for the ALJ to rely on Dr. Gerth's opinion regarding the fracture of his metacarpal because he never alleged "he was disabled by his injured finger." (PageID.710.) The record betrays Plaintiff's claim. Indeed, Plaintiff did allege that he was disabled due to a broken hand. (PageID.182.) The metacarpals "are long bones within the hand that are connected to the carpals, or wrist bones, and to the phalanges, or finger bones." *Metacarpals*, HEALTHLINE, http://www.healthline.com/human-body-maps/metacarpals (last visited Apr. 11, 2016). Thus the doctor's opinion that Plaintiff's broken metacarpal did not prevent him from working after August 25, 2010, certainly is relevant to Plaintiff's disability claim. Finally, Plaintiff argues the ALJ could not rely on Dr. Lachniet's opinion because the doctor examined him in connection to a workers compensation claim. (PageID.709.) An ALJ is allowed to consider "other factors" in evaluating medical opinions. 20 C.F.R. § 404.1527(c)(6). Plaintiff did not argue to the ALJ that Dr. Lachniet's opinion should be discounted. Only now, for the first time, does Plaintiff make this claim. Plaintiff presents no evidence of bias other than a bald-faced claim that Dr. Lachniet could not render an unbiased opinion. Such is insufficient to show that Dr. Lachniet was

not an acceptable medical source.

For the above reasons, the ALJ did not err in her treatment of the medical opinions in the record. Plaintiff's first claim of error is thus rejected.

**2.**

Plaintiff next claims the ALJ's decision that he could perform light work was not supported by substantial evidence. Largely based on the medical opinions already discussed, Plaintiff claims that the most he can do is sedentary work, which means that after age 50, the Medical Vocational Guidelines would direct a finding of disabled. Plaintiff alleges that because of his limitations, the ALJ should have applied the next lower exertional category (sedentary), as directed by the Commissioner's Program Operations Manual System (POMS). The POMS rule relied on by Plaintiff states that:

> Determining whether a claimant is disabled is a more difficult judgment when his or her exertional capacity falls in the middle of two rules and the rules direct opposite conclusions. In this situation apply the:
>
> • higher-numbered rule and find the claimant not disabled if you conclude the claimant has a slightly reduced capacity for the higher level of exertion; or
>
> • lower-numbered rule and find the claimant disabled if you conclude the claimant has a significantly reduced capacity for the higher level of exertion.

POMS DI 25025.015(D), *available at* https://secure.ssa.gov/apps10/poms.nsf/partlist. There is nothing in the record that demonstrates the ALJ departed from the POMS. She did not determine that the Plaintiff had "a significantly reduced capacity" for light work. Instead, the ALJ applied Social Security Ruling (SSR) 83-12, which directs:

> Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work as defined in sections

> 404.1567 and 416.967 of the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. The adjudicator will consider the extent of any erosion of the occupational base and access its significance.

SSR 83-12, 1983 WL 31253, at *2 (1983). (PageID.143.) As noted above, the ALJ concluded Plaintiff could perform a limited range of light work. She then questioned a VE to determine whether there existed a significant number of jobs Plaintiff could perform. The Court finds no error here. Moreover, POMS is an internal agency manual. Its guidelines have no legal force, and failure to follow the POMS is not legal error. *See Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989) ("POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law . . . ."). POMS guidelines, where applicable, provide persuasive authority. *Id.* Plaintiff's claim is thus rejected.

**3.**

Plaintiff submitted to the Appeals Council evidence that was not presented to the ALJ. (PageID.32–124.) Plaintiff has also presented evidence that, although submitted to the Appeals Council, does not appear to have been marked as exhibits in the Appeals Council's decision. (PageID.638–86.) This Court, however, is precluded from considering the evidence in question. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also, Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007). The Court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g).

*See Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988) (per curiam). Sentence six provides that "[t]he court . . . may at any time order the additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added).

For purposes of a sentence-six remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. Good cause is shown for a sentence-six remand only "if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability." *Koulizos v. Sec'y of Health & Human Servs.*, 1986 WL 17488 at *2 (6th Cir. Aug.19, 1986). Plaintiff must demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. The party seeking the remand bears the burden of demonstrating that the good cause and materiality requirements are met. *Hollon*, 447 F.3d at 483. In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

       A.      *Evidence Prior to the ALJ's decision*

The Appeals Council marked evidence predating the ALJ's decision as Exhibits 19F-22F. (PageID.22–23, 145–49.) Exhibit 19F consists of physical therapy notes at Garber Memorial Health Tamarac Rehabilitation Services dating between May 2008 and February 2009. (PageID.639–80.) Exhibit 20F is a September 5, 2012, treatment note from Dr. Gerth that found Plaintiff had a herniated cervical disc, and a mild to moderate ulnar carpal impingement, which was only minimally symptomatic. Plaintiff also had mildly asymptomatic hardware on his metacarpus. (PageID.681.) Exhibit 21F is an August 7, 2013, treatment note from Dr. Kapteyn at Orthopaedic Associates of Muskegon in which Plaintiff received an injection to treat his cervical spondylosis. (PageID.682.). Exhibit 22F consists of several additional treatment notes, ranging from August 2013 to October 2013, from Dr. Thome regarding Plaintiff's treatment for gout. (PageID.683–86.)

The proposed new evidence in Exhibits 19F-21F is not new; it was available all along. Plaintiff submitted other records from these providers, and he provides no reason why these records were not also given to the ALJ. For the same reason, Plaintiff fails to establish good cause for not presenting the evidence in the hearing before the ALJ. The records contained in Exhibit 22F were created after the administrative hearing, but before the ALJ's decision. Even if they are considered new, however, Plaintiff cannot show that they are material. Plaintiff did not claim that gout was a disabling condition, and the records contained therein do not establish that Plaintiff's gout impaired him to any extent. Plaintiff cannot show a reasonable probability that had the ALJ considered this record, his decision would have been different, and thus cannot satisfy the materiality prong. Accordingly, Plaintiff has not met his burden of showing he is entitled to a sentence six remand for further consideration of Exhibits 19F-22F.

B.     *Evidence After the ALJ's Decision.*

At the end of July 2014, Plaintiff underwent several sessions of physical therapy at Spectrum Health Rehabilitation Services. (PageID.62–66). At his initial evaluation on July 30th, Plaintiff stated that his current condition began three months ago, and had gradually gotten worse. (PageID.62.) The therapist found Plaintiff had a restricted range of motion with his cervical spine, but his shoulder mobility was within normal limits. (PageID.64–65.) A review of the therapy records indicates that Plaintiff experienced improvement at therapy, but the improvement did not last long beyond a few hours after each session. Quite often, Plaintiff admitted that this was due to over exerting himself while performing a range of activities at home, including: kayaking, working on his son's car, yard work, and working on his camper. (PageID.39, 42, 56, 60). In his visits between August 13 and August 28, Plaintiff continued to report pain ranging from 4 to 6 on a scale of 0 through 10. (PageID.47–55.) On September 12, the last date of treatment in the record, Plaintiff's therapist described him as making a "moderate amount of progress." Plaintiff had an increased range of motion on his cervical spine. Plaintiff further stated he was committed to modifying his activities at home in order to increase his progress. (PageID.36.)

Other records after the ALJ's decision include a March 13, 2014, treatment note from Dr. Thome, who noted Plaintiff's history of gout, and degenerative joint disease, but found Plaintiff had a normal range of motion on his neck as well as for the musculoskeletal system in general. (PageID.122.) On April 18, 2014, Plaintiff was treated for shingles. (PageID.107.) The record also contains two treatment notes from Orthopaedic Associates of Muskegon. On June 16, 2014, Plaintiff saw Dr. Eyke for neck pain. The doctor stated he would perform a further spinal fusion if other treatment failed. (PageID.94.) Dr. Kapteyn referred Plaintiff to an osteopathic clinic for further assessment on August 5, 2014. (PageID.93.) On July 2, 2014, Plaintiff saw Dr. Gerth for

17

left shoulder pain. Dr. Gerth noted that it was similar to the pain Plaintiff had previously had in his right shoulder, and that Plaintiff had been experiencing pain for several months. (PageID.102.) Dr. Gerth performed surgery on July 8, 2014. Dr. Gerth removed the hardware from Plaintiff's right hand, and performed an acromioplasty on Plaintiff's left shoulder. (PageID.100.) At a follow up visit on July 16, 2014, Dr. Gerth noted that he was doing "very well." Plaintiff had already regained the range of motion in his left shoulder. (PageID.97.)

Plaintiff cannot demonstrate that this new evidence would have led the ALJ to arrive at a different conclusion. The physical therapy notes of July 2014, for instance, state that the therapy was necessary for an aggravation of his condition that occurred just three months prior. This places the injury at March or April 2014–well after the ALJ's October 2013 decision. Similarly, the injury to Plaintiff's left shoulder appears to have occurred well after the ALJ's decision. Moreover, the therapy notes show that during this period Plaintiff, whether well advised or not, took part in a wide variety of strenuous activities. Such is inconsistent with a determination that Plaintiff is unable to perform substantial gainful activity. Accordingly, Plaintiff cannot satisfy his burden necessary for a sentence six remand. Plaintiff's claim of error is thus rejected.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated: May 18, 2016 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE